**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**JONATHAN LOVE, SHERI McWILLIAMS,**
**TRACY KEEN, JEREMY POPE, AND**
**ROBIN LOVE, INDIVIDUALLY & ON**
**BEHALF OF OTHERS SIMILARLY SITUATED**                                   **PLAINTIFFS**

**VS.**                                         **NO. 5:13CV0292-DPM**

**RETZER, L.L.C., RETZER RESOURCES, INC.,**
**THE RETZER GROUP, INC. AND**
**MICHAEL L. RETZER, INDIVIDUALLY,**
**AND IN HIS CAPACITY AS AN OWNER,**
**OFFICER AND MANAGER OF**
**RETZER RESOURCES, INC.,**
**THE RETZER GROUP, INC. AND**
**RETZER LLC**                                                  **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' MOTION FOR APPROVAL OF NOTICE AND**
**CONSENT TO JOIN COLLECTIVE ACTION**

Come the Defendants, **Retzer, LLC, Retzer Resources, Inc., The Retzer Group, Inc.,**

**and Michael L. Retzer, individually**, by and through their attorneys, **Ramsay, Bridgforth,**

**Robinson and Raley LLP**, and for their brief in support of response to Plaintiffs' motion for

approval of notice and consent to joint collective action state:

The law is settled that 29 U.S.C. § 216(b) provides for a class action where the

complaining employees are "similarly situated." *Thiessen v. General Electric Capital Corp.*, 267

F.3d 1095, 1102 (10th Cir. 2001).  However, an employee can only be a party plaintiff if he gives

-2-

his consent in writing to become such a party and the consent has to be filed in the court where the action has been brought.

It is also clear that federal district courts have the discretionary power in appropriate cases to authorize the sending of notice to potential class members in a collective action. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The Plaintiffs in the instant case asked the Court to "authorize the sending of such notice to all persons who worked as hourly employees at any time from three years prior to the mailing of the notice to the present at Retzer-owned McDonald's restaurants."  (Plaintiffs' motion for approval of notice and consent, page 2 paragraph 1).

The evidence indicates that there are 44 McDonald's franchises owned by the various Defendants with approximately 2,500 current employees. (pg. 17 Retzer deposition, Exhibit A) These restaurants are spread out over three states, Arkansas, Louisiana, and Mississippi.  The named Plaintiffs in this action all worked for a single franchise acquired by Retzer, LLC in September of 2012.  One of the named Plaintiffs, Jeremy Pope, died the day before his deposition was to occur. (pg. 5 McWilliams' deposition, Exhibit B) Another of the named Plaintiffs, Jonathan Love, is incarcerated and was in the Grant County detention center awaiting transfer to the Arkansas Department of Corrections on the day the remaining three plaintiffs were deposed. (pgs. 5-6 McWilliams' deposition, Exhibit C).

Three of the named Plaintiffs, Tracy Keen, Sherri McWilliams, and Robin Love, were deposed.  Their specific testimony was that during periods of time while employed by the McDonald's in Sheridan, Arkansas, that they worked hours off the clock at the bequest of their store manager. The store manager they are referring to is Chris Wilson. (see pgs. 34-35 of

-3-

Keen's deposition, Exhibit D)  They claim that they brought this to the attention of the store manager's supervisor, but to no one else in management. (pg. 36 of Keen's deposition, where she states she talked to Ezra, who she identifies as Wilson's supervisor, on one occasion in March or April of 2013, Exhibit E)  They claim that they were being paid for 40 hours or less per week in weeks in which they actually worked, based on their best guess, 50 to 55 hours a week.  Ms. McWilliams and Ms. Love no longer are employed at the McDonald's franchise in Sheridan. McWilliams left in June 2013 (pg. 13 McWilliams' deposition, Exhibit F) and Love left in August 2013 (pg.12 Love's deposition, Exhibit G).  Tracy Keen continues to work at the franchise but testified that since the store manager changed, that she gets her breaks and things have gotten a lot better. (pgs. 24-25 Keen's deposition, Exhibit H) Her claim is between February 2013 and December 2013 she worked off the clock a few shifts a week. She testified time was not "skimmed" every day or week. (pg. 25 Keen's deposition).

Also, in support of the Plaintiffs' motion for approval are attached affidavits or declarations of Kiesha Wicklund, Lekendra Dunlap, Courtney Dunlap, Ramona Percy, and Otis Jones.  Ms. Wicklund indicates that she is an hourly employee at the McDonald's franchise in Stuttgart, Arkansas, having worked there from November of 2011 to October of 2012 and from December 12, 2013 to the present.  She declares that she typically worked 46 to 48 hours per week, although she was scheduled for 40.  She claims she was regularly asked by her supervisors to keep working after she clocked out for the day.  She also claims that any hours over 40 were deleted from the payroll for that week.  She indicates lunch breaks of 30 minutes were deducted from her pay, even though she typically worked through her lunch break.  She indicates that

-4-

based on conversations with those similarly situated to herself that others would want to join this lawsuit if notice was issued.

Lekendra Dunlap indicates that she worked at the McDonald's in Stuttgart from November of 2012 to February of 2013. She indicated that she typically worked 25 hours a week and that she would clock in and out for her shifts. She states that she frequently clocked out for the day and then kept working after being asked to continue by her supervisors. She also claims that lunch breaks of 30 minutes were deducted from her pay, even though she typically worked through her lunch break. She indicates that her supervisors knew that she was working through those breaks. She also indicates based on conversations with those that she says are similarly situated she believes that others would join the suit.

Courtney Dunlap declares that she worked at the McDonald's in Stuttgart from February of 2012 to September of 2012. She says she typically worked 30 hours per week, clocked in and out for her shifts, and frequently clocked out for the day, but kept working after being asked to continue to work by her supervisors. She also claims that her lunch breaks were interrupted and that her supervisors knew she was working those breaks. She indicates she attended two days of training and was not compensated for that training.

Ramona Percy declares she worked at the McDonald's franchise in West Helena as a shift manager, working there from February of 2013 to September of 2013. She says she typically worked 44 hours a week, although she was only scheduled for 40. She says she clocked in at the start of her shift and clocked out when her shift was over. She says she was regularly asked by her supervisors to keep working after she clocked out.

-5-

"My supervisors would frequently ask me to clock out and then told me to wait for the police officer to arrive at the store for the bank deposit and I would wait up to two hours."

She says she usually worked more than 40 hours, but any hours over 36 were deleted and that she typically worked through her lunch breaks. She also makes a claim that she attended some training for which she was not compensated.

Finally, Otis Jones says he was an employee of the McDonald's in Dumas. He claims to have worked there from September of 2009 to January of 2012. He said he would typically work 42 to 43 hours per week, although he was only scheduled for 32 to 37 hours. He says he was regularly asked by his supervisor to keep working after he clocked out for the day. He says he clocked in at the start of his shift and clocked out when his shift was over. He claims that he was clocked in while working, but any hours worked over the 32 to 37 scheduled hours were deleted for that week. He also claims that his supervisors were aware that he worked lunch breaks that were deducted. He claims that he attended training at McDonald's and was not compensated for that training either.

None of the declarants provide the names of the company supervisors at Stuttgart, Dumas, or West Helena who allegedly (1) changed their time cards; (2) worked them during uncompensated breaks; or (3) were aware of training for which the declarants claim compensation. They simply describe them as their supervisors, which must mean the store manager or shift supervisors at their specific stores. The named plaintiffs who have been deposed all worked at Sheridan and allege it was their store manager, Chris Wilson, who had knowledge and allegedly condoned them working off the clock.

-6-

In deciding whether an opt-in case is appropriate for court-authorized notice, the question that this Court has to answer is whether or not the Plaintiffs have established that they and the punitive class members are similarly situated.

A plaintiff bears the burden of proof at the notice stage to demonstrate that the named plaintiffs and potential plaintiffs together were victims of a common policy or plan that violated the law. *Wheeler v. Baxter Healthcare Corp.*, no. 4:11CV00263JLH, 2011 W L 5402446 (ED ARK, November 8, 2011). That burden can be satisfied if the plaintiffs provide detailed allegations supported by affidavits. However, they may not meet this burden through unsupported assertions of additional plaintiffs of widespread FLSA violations. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F.Supp.2d 1014, 1017 (ED MO 2010).

The named Plaintiffs must also show that similarly situated potential plaintiffs actually exist. Based on the testimony of the named Plaintiffs and the affidavits filed with the motion, essentially what the Plaintiffs and the punitive class members are arguing is that local management at the stores where they worked required them to work off of the clock.

This is in direct conflict with the company's stated policy both in its handbook and its training films. See page 20 of Employee Handbook for example, which provides in pertinent part:

If you are classified as a non-exempt employee, you must record the total number of hours you work each day, utilizing the time recording system provided by the Company. These hours must be accurately recorded and must accurately reflect all regular and overtime hours worked, any absences, late arrivals, early departures and meal breaks. At the end of each week, you should verify to your Supervisor that the time you have

submitted is accurate.  When you receive each paycheck, please verify immediately that you were paid correctly for all regular and overtime hours worked each work week, or immediately report anything you believe is in error or incorrect.

Unless you are authorized by your Supervisor, you should not work any hours that are not authorized.  Do not start work early, finish work late, work during a meal break or perform any other extra or overtime work unless you are authorized to do so and that time is recorded on your time card.  Employees are prohibited from performing any "off-the-clock" work.  "Off-the-clock" work means work you may perform but fail to report on your time card.

It is also in direct violation of its posted policy at its stores.  The plaintiffs and the declarants imply their individual cases of working off of the clock were accepted practices at their stores.  The named plaintiffs did not follow company policy if what they say is true about their recorded time being inaccurate, nor do they express any knowledge with respect to the practice at the 40 other stores owned by the Defendants.

The Employee handbook provides a means to report errors in time worked that bypasses the local store management.  It states in pertinent part also at page 20:

If a mistake in your pay occurs and is brought to our attention, we will promptly make any corrections necessary.  Please review your pay stub when you receive it to make sure it is correct.  If you believe a mistake has occurred or you believe you are not being paid

-8-

properly, or if you have any questions, you are required to immediately make your direct

Supervisor aware of the issue.  If your direct Supervisor is unavailable or if you believe it

would be inappropriate to contact that person, or if you have not received a prompt and

fully acceptable reply, you should immediately contact the Company's Payroll

Department or Human Resources Manager at 1-800-748-8790.

In a case similar to this one, conditional certification was denied for a nationwide opt in

notice based on the fact that the plaintiffs failed to demonstrate managers in other parts of the

nation had disregarded the FLSA's overtime requirements. See *Jost v. Commonwealth Land Title*

*Insurance Company,* 2009 WL 211943 at*3 (E.D. Missouri, Jan. 27, 2009). The plaintiffs in *Jost*

attributed knowledge of overtime violations to four specific managers, but not to any others.

Thus the scope of notice proposed was not appropriate. Instead, notice was only sent to

employees who worked for those specific managers.

In this case, the only manager specifically named is Chris Wilson in Sheridan.  No other

manager is identified by any of the declarants or the plaintiffs.  There are no party admissions by

any of the defendants or their agents that Wilson engaged in such behavior or condoned it. The

individual store managers set the pay and hours for the employees in their store. (pg. 26 Retzer

deposition, Exhibit I)  They also have the authority to alter time cards if an employee fails to

clock in or out. (pgs. 54-55 Burt deposition, Exhibit J)  A general manager as referred to by Mr.

Burt is another term for an individual store manager.

As one court has said:  "A mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself to warrant the creation of a collective action."  *Guerra v. Big Johnson Concrete Pumping, Inc.*, 206 W L 2290512 (SD FLA May 15, 2006).

The Plaintiffs in this action need to identify a factual or legal nexus that binds the Plaintiffs and potential opt-ins of Fair Labor Standards Act claims.  See *Crawford v. Lexington-Fayette Urban County Government*, 2008 W L 2885230, at *9 (ED KY July 22, 2008).  In this case, the Plaintiffs are trying to cast a very broad net in defining employees who are similarly situated.  They do so without any of the declarants expressing any knowledge of the practices at other locations.  Out of 2,500 employees, there are four named Plaintiffs and five declarants for a total of nine employees working in four Arkansas-based franchises at different times.

It is appropriate to deny certification at the notice stage when the Plaintiffs and their opt-ins do not sufficiently support their allegations with respect to the broad notice that they are requesting.  See *Trevant v. Fid. Emp. Servs. Corp.*, 434 F.Supp.2d 40, 48 (D. Mass. 2006), which limited conditional certification to one city because the declarants did not have knowledge of practices at the other locations.  See also *West v. Border Foods, Inc.*, 206 W L 1892527, at *9 (D. Minn. July 10, 2006), denying conditional certification where the plaintiff-supported allegations of nationwide off the clock overtime consisted of testimony from six of 240 shift managers.

When one looks at the affidavits, their declarations amount to really nothing more than conclusory allegations that they feel there may be additional, similarly situated potential class members at their locations in Dumas, Stuttgart, and West Helena.

-10-

The undisputed evidence is that the store managers review and approve the time submitted by the employees.  The testimony of the named Plaintiffs specifically indicts their store manager as the person who changed their time.  The declarants indicate that it was their store managers that also altered their time.  There is no indication in any of the material presented by the declarants that this was the case with respect to store managers in any of the other stores.  In fact, the declarants do not indicate nor do the Plaintiffs indicate that they have any knowledge of the practices in stores in which they never worked.  It would be a huge leap to assume for purposes of this  litigation that the issues raised by the Plaintiffs and the declarants are not peculiar to them as opposed to being practice that requires notice to over 2,500 current employees and that many former employees working in three different states.

The plaintiffs request for Notice and Consent to Join Collective Action should be denied for these reasons.

Respectfully submitted,

**/s/  Spencer F. Robinson**
Bar Number 77111
Attorney for Defendants
Ramsay, Bridgforth, Robinson and Raley LLP
P. O. Box 8509
Pine Bluff, AR  71611-8509
Telephone:  (870) 535-9000
E-mail:  spencerrobinson@ramsaylaw.com

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2014, I electronically filed the foregoing with the

Clerk of Court using the CM/EMF system, which shall send notification of such filing to the

following:

John T. Holleman
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, AR  72201
E-mail:  jholleman@johnholleman.net
Telephone:  (501) 975-5040

Maryna O. Jackson
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, AR  72201
E-mail:  maryna@johnholleman.net
Telephone:  (501) 975-5040

Lloyd "Tre" Kitchens
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR  72227
Telephone:  (501) 588-0549

/s/ Spencer F. Robinson
Bar Number 77111
Attorney for Defendants
Ramsay, Bridgforth, Robinson and Raley LLP
P. O. Box 8509
Pine Bluff, AR  71611-8509
Telephone:  (870) 535-9000
E-mail:  spencerrobinson@ramsaylaw.com